IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANA MOREL, | CASE NO. 4:16-cv-00476-MWB-GBC |
| | (JUDGE BRANN) |
| Plaintiff, | |
| | (MAGISTRATE JUDGE COHN) |
| v. | |
| | REPORT AND RECOMMENDATION TO VACATE THE DECISION OF THE COMMISSIONER AND REMAND FOR FURTHER PROCEEDINGS |
| CAROLYN W. COLVIN, COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | Docs. 1, 6, 7, 8, 9, 10 |

### REPORT AND RECOMMENDATION

**I.  Introduction**

The above-captioned action is one seeking review of a decision of the Commissioner of Social Security ("Defendant") denying the application of Plaintiff for benefits under the Social Security Act, 42 U.S.C. §§401-433, 1382-1383 (the "Act") and Social Security Regulations, 20 C.F.R. §§404.1501 *et seq.*, §§416.901 *et. seq.*[1] (the "Regulations"). The administrative law judge ("ALJ") decision lacks substantial evidence because the ALJ failed to elicit vocational expert ("VE") testimony. Instead, the ALJ relied on the medical-vocational guidelines ("Grids"). This case required VE testimony because the ALJ found that Plaintiff was limited

---

[1] Part 404 governs DIB, Part 416 governs SSI. *See Sims v. Apfel*, 530 U.S. 103, 107 (2000). Like *Sims*, these regulations "are, as relevant here, not materially different" and the Court "will therefore omit references to the latter regulations." *Id.*

to sedentary work and included a varied combination of non-exertional limitations, including limitations in using the hands, manipulating, reaching, and balancing, which may significantly erode the sedentary occupational base. The Court recommends remand, rather than reversal, because the VE testimony on remand may still indicate Plaintiff is not disabled. However, it is for the ALJ, not the Court, to make that finding in the first instance. The Court recommends that Plaintiff's appeal be granted, the decision of the Commissioner be vacated, and the matter be remanded for further proceedings and proper evaluation of the medical opinions.

## II. Procedural Background

On August 23, 2012, Plaintiff applied for SSI and DIB. (Tr. 170-77). On October 10, 2012, the Bureau of Disability Determination ("state agency") denied Plaintiff's application (Tr. 53-74), and Plaintiff requested a hearing. (Tr. 115-16). On March 4, 2014, an ALJ held a hearing at which Plaintiff and a vocational expert ("VE") appeared and testified. (Tr. 32-50). On October 1, 2014, the ALJ found that Plaintiff was not entitled to benefits. (Tr. 15-31). Plaintiff requested review with the Appeals Council (Tr. 14), which the Appeals Council denied on December 10, 2015, affirming the decision of the ALJ as the "final decision" of the Commissioner. (Tr. 3-7). *See Sims v. Apfel*, 530 U.S. 103, 107 (2000).

On March 18, 2016, Plaintiff filed the above-captioned action pursuant to 42 U.S.C. § 405(g) to appeal the decision of the Commissioner. (Doc. 1). On May 17, 2016, the Commissioner filed an answer and administrative transcript of proceedings. (Docs. 6, 7). On July 5, 2016, Plaintiff filed a brief in support of the appeal ("Pl. Brief"). (Doc. 8). On August 4, 2016, Defendant filed a brief in response ("Def. Brief"). (Doc. 9). On August 18, 2016, Plaintiff filed a brief in reply ("Pl. Reply"). (Doc. 10). On November 7, 2016, the Court referred this case to the undersigned Magistrate Judge. The matter is now ripe for review.

### III.    Standard of Review and Sequential Evaluation Process

To receive benefits under the Act, a claimant must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A). The Act requires that a claimant for disability benefits show that:

> He is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).

The ALJ uses a five-step evaluation process to determine if a person is eligible for disability benefits. *See* 20 C.F.R. § 404.1520. The ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment from 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing"); (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work. *See* 20 C.F.R. §§ 404.1520. Before step four in this process, the ALJ must also determine Plaintiff's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e).

The disability determination involves shifting burdens of proof. The claimant bears the burden of proof at steps one through four. If the claimant satisfies this burden, then the Commissioner must show at step five that jobs exist in the national economy that the claimant can perform. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). The ultimate burden of proving disability under the Act lies with the claimant. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.912(a).

When reviewing the denial of disability benefits, the Court must determine whether substantial evidence supports the denial. *Johnson v. Commissioner of Social Sec.*, 529 F.3d 198, 200 (3d Cir. 2008). Substantial evidence is a deferential standard of review. *See Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence is "less than a preponderance" and "more than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

### IV.   Analysis

#### a.   Grids

The ALJ must craft an RFC before moving to steps four and five. *See Sykes v. Apfel,* 228 F.3d 259, 263 (3d Cir. 2000). RFC limitations "can be either exertional or nonexertional." *Id.* Exertional limitations are defined as limitations in "sitting, standing, walking, lifting, carrying, pushing, and pulling." 20 C.F.R. § 404.1569a(b). "To determine the physical exertion requirements of work in the national economy, [the ALJ] classif[ies] jobs as sedentary, light, medium, heavy, and very heavy." 20 C.F.R. § 404.1567. Non-exertional limitations include "manipulative or postural functions" like "reaching, handling, stooping, climbing, crawling, or crouching," along with mental impairments and other limitations. 20 C.F.R. § 404.1569a(c).

Plaintiff alleged disability due to neuropathy, chronic back pain, edema, inflammation of the ankles, swollen wrist, hyperlordosis, and asthma (Tr. 65). The ALJ found that Plaintiff's RFC included exertional and multiple non-exertional limitations:

> [Claimant could perform] sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she cannot climb ladders, ropes or stairs, and can perform all other postural functions occasionally; she can frequently handle and finger; she must avoid ordinary workplace hazards; and she must avoid concentrated exposure to extreme cold, extreme heat, humidity, and toxic caustic chemicals and similar occupational irritants.

(Tr. 21). The ALJ did not obtain VE testimony, instead writing:

> If the claimant had the residual functional capacity to perform the full range of sedentary work, considering the claimant's age, education, and work experience, a finding of "not disabled" would be directed by Medical-Vocational Rule 201.28. However, the additional limitations have little or no effect on the occupational base of unskilled sedentary work. A finding of "not disabled" is therefore appropriate under the framework of this rule. The claimant's additional postural and environmental limitations do not significantly erode the claimant's sedentary exertional base (SSR 85-15).

(Tr. 26).

If a claimant has exertional, but not non-exertional, limitations, the ALJ can use the medical-vocational guidelines (the "Grids") to determine if an individual with the claimant's RFC can perform jobs that exist in significant number in the national economy. *See Sykes,* 228 F.3d at 263. The Grids reflect "administrative notice [that] has been taken of the numbers of unskilled jobs that exist throughout

the national economy at the various functional levels (sedentary, light, medium, heavy, and very heavy)." 20 C.F.R. § Pt. 404, Subpt. P, App. 2, §200.00(b). The Regulations note that the Grids:

> [R]eflect the major functional and vocational patterns which are encountered in cases which cannot be evaluated on medical considerations alone, where an individual with a severe medically determinable physical or mental impairment(s) is not engaging in substantial gainful activity and the individual's impairment(s) prevents the performance of his or her vocationally relevant past work. They also reflect the analysis of the various vocational factors (i.e., age, education, and work experience) in combination with the individual's residual functional capacity (used to determine his or her maximum sustained work capability for sedentary, light, medium, heavy, or very heavy work) in evaluating the individual's ability to engage in substantial gainful activity in other than his or her vocationally relevant past work. Where the findings of fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with all of the criteria of a particular rule, the rule directs a conclusion as to whether the individual is or is not disabled.

20 C.F.R. § Pt. 404, Subpt. P, App. 2, §200.00(a). Describing the Grids, the Supreme Court explains that:

> Prior to 1978, the Secretary relied on vocational experts to establish the existence of suitable jobs in the national economy. After a claimant's limitations and abilities had been determined at a hearing, a vocational expert ordinarily would testify whether work existed that the claimant could perform. Although this testimony often was based on standardized guides, see 43 Fed.Reg. 9286 (1978), vocational experts frequently were criticized for their inconsistent treatment of similarly situated claimants. See *Santise v. Schweiker,* 676 F.2d 925, 930 (CA3 1982); J. Mashaw et al., Social Security Hearings and Appeals 78–79 (1978). To improve both the uniformity and efficiency of this determination, the Secretary promulgated medical-vocational guidelines as part of the 1978 regulations. See 20 CFR pt. 404, subpt. P, app. 2 (1982).

> These guidelines relieve the Secretary of the need to rely on vocational experts by establishing through rulemaking the types and numbers of jobs that exist in the national economy. They consist of a matrix of the four factors identified by Congress—physical ability, age, education, and work experience—and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy. Where a claimant's qualifications correspond to the job requirements identified by a rule, the guidelines direct a conclusion as to whether work exists that the claimant could perform. If such work exists, the claimant is not considered disabled.

*Heckler v. Campbell*, 461 U.S. 458, 461-62, 103 S. Ct. 1952, 1954-55, 76 L. Ed. 2d 66 (1983) (Footnotes omitted).

"Since the [Grids] are predicated on an individual's having an impairment which manifests itself by limitations in meeting the strength requirements of jobs, they may not be fully applicable where the nature of an individual's impairment does not result in such limitations, e.g., certain mental, sensory, or skin impairments." 20 C.F.R. § Pt. 404, Subpt. P, App. 2, §200.00(e). "[N]onexertional limitations further erode [the] job base, thus making the Grids unreliable in finding that an individual with nonexertional limitations is not disabled." *Hann v. Colvin*, No. 3:12-CV-02222, 2014 WL 4802902, at *13 (M.D. Pa. Sept. 26, 2014). If the claimant "has an impairment or combination of impairments resulting in both strength limitations and nonexertional limitations," the Grids may be used to find them disabled based on strength limitations alone "and, if not, the [Grids]…provide a framework." *Id.* §200.000(e)(2).

Plaintiff asserts that the ALJ should have solicited VE testimony. (Pl. Brief). Defendant responds that "[t]he Grids may be used in lieu of vocational expert testimony about specific jobs where the RFC includes nonexertional impairments, and the Agency relies on an Social Security Ruling (SSR) that includes a statement explaining how the particular nonexertional limitations under consideration affect a claimant's occupational base." (Def. Brief at 14-15) (citing Acquiescence Ruling (AR) 01-1(3), 2001 WL 65745, at *4). ARs are guidance published by the Social Security Administration. 20 C.F.R. § 404.985 ("Issuance of an Acquiescence Ruling. When we determine that a United States Court of Appeals holding conflicts with our interpretation of a provision of the Social Security Act or regulations and the Government does not seek further judicial review or is unsuccessful on further review, we will issue a Social Security Acquiescence Ruling. The Acquiescence Ruling will describe the administrative case and the court decision, identify the issue(s) involved, and explain how we will apply the holding, including, as necessary, how the holding relates to other decisions within the applicable circuit"). AR 01-1(3) was published in response to *Sykes* and provides that the ALJ may "rely on an SSR that includes a statement explaining how the particular nonexertional limitation(s) under consideration in the claim being adjudicated affects a claimant's occupational job base…we will include a citation to the SSR in our determination or decision." *Id.*

Defendant asserts that the ALJ "cited to SSR 85-15" and "referred to" SSR 83-11, SSR 83-12, and SSR 83-14. (Def. Brief at 16). Defendant also cites SSR 96-9p. (Def. Brief at 16). Plaintiff replies that the ALJ only explicitly relied on SSR 85-15, so Defendant's remaining arguments are post-hoc rationalizations, none of the SSRs are "crystal clear" about the erosion of the occupational base given the non-exertional limitations, and that reliance on the SSRs, which each address only one type of non-exertional limitation, is inappropriate when there is a wide variety of non-exertional limitations. (Pl. Reply).

Third Circuit case law fails to support Defendant's claims. *See Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 94 (3d Cir. 2007); *Allen v. Barnhart*, 417 F.3d 396, 407 (3d Cir. 2005). Both cases were decided after *Sykes* and AR 01-1(3), and the SSA issued no AR indicating either conflicted with its own policy. *See Betar v. Colvin*, Report and Recommendation at *33, 4:15-cv-00921-MWB-GBC (requirement to issue an Acquiescence Ruling within 120 days is mandatory. *See Hewitt v. Helms*, 459 U.S. 460, 471, 103 S. Ct. 864, 871, 74 L. Ed. 2d 675 (1983) ("language of an unmistakably mandatory character" includes "'shall,' 'will,' or 'must'"). If 120 days have passed since a Court of Appeals decision, then the Social Security Administration has determined that it does not conflict with nationwide policy"). *Allen* explained, "if the Secretary wishes to rely on an SSR as a replacement for a vocational expert, it must be crystal-clear that the SSR is

probative as to the way in which the nonexertional limitations impact the ability to work, and thus, the occupational base." *Allen*, 417 F.3d at 407.

Consistent with AR 01-1(3), Courts uphold an ALJ's reliance on the Grids when there is only a single non-exertional limitation.[2] Courts generally hold that individuals with exertional and multiple non-exertional impairments should not be denied disability solely by operation of the Grids.[3]

---

[2] *See Melvin v. Comm'r of Soc. Sec.*, 226 F. App'x 126, 128 (3d Cir. 2007) (Affirming where only non-exertional limitation was license suspension precluding driving commercial vehicle, not a significant limitation); *Rembert v. Comm'r of Soc. Sec.*, 142 F. App'x 570, 573 (3d Cir. 2005) (affirming where only limitation was "ability to only perform "routine and repetitive" tasks); *Creegan v. Comm'r of Soc. Sec.*, 142 F. App'x 567, 570 (3d Cir. 2005) (affirming where "single episode of major depression" was not significant non-exertional limitation); *Caruso v. Comm'r of Soc. Sec.,* 99 F. App'x 376, 382 (3d Cir. 2004) (Affirming where ALJ found claimant "has not had any significant non-exertional limitations"); *Garcia v. Comm'r of Soc. Sec.*, 94 F. App'x 935, 939 (3d Cir. 2004) (Affirming where only non-exertional limitation was fine manipulation, and ALJ consulted with VE).

[3] *See Maddaloni v. Comm'r of Soc. Sec.*, 340 F. App'x 800, 803 (3d Cir. 2009) (remanding "because there is more than one limitation and none of these limitations have been identified"); *Rodriguez v. Comm'r of Soc. Sec.*, 231 F. App'x 103, 106 (3d Cir. 2007) (Remanding because "non-exertional limitation with respect to his ability to concentrate for extended periods of time…would preclude application of the Grids"); *Hall v. Comm'r of Soc. Sec.*, 218 F. App'x 212, 215 (3d Cir. 2007) ("Because the ALJ recognized in her decision several nonexertional limitations, specifically, urinary frequency and a restriction to 'simple, repetitive tasks' arising from Hall's impairments, the ALJ's reliance on the grids constitutes reversible error under our decision in *Sykes*"); *Grossberg v. Barnhart*, No. 04-2397, 2005 WL 703736, at *2 (3d Cir. Mar. 29, 2005); *Linney v. Colvin*, No. 3:11-CV-02243, 2013 WL 3102716, at *1 (M.D. Pa. June 18, 2013); *Davern v. Astrue*, No. 4:11-CV-00961, 2012 WL 3903778, at *4 (M.D. Pa. Sept. 7, 2012).

In a similar, although non-precedential, case, the Third Circuit explained:

The ALJ made the following factual finding:

> Prior to June 21, 1995, the claimant had the residual functional capacity to perform the physical exertion and nonexertional requirements of work except for operating moving machinery due to her episodic vertigo (20 CFR 404.1545).

App. at 14. He then relied upon Social Security Ruling 85–15 to provide support for his finding that there were jobs in the national economy that Lamanna could perform prior to June 21, 1995:

> [W]ithin the teachings of Social Security Ruling 85–15, the undersigned concludes that there was no significant erosion of the claimant's occupational base due to the lack of "significant" non-exertional limitations.

\* \* \* \* \* \*

> Prior to June 21, 1995, the claimant's capacity for the full range of sedentary work was not significantly compromised by her non-exertional limitations. Accordingly, using the above-cited rule as a framework for decisionmaking, the claimant was not disabled, prior to June 21, 1995.

App. at 14, 15.

Assuming that a Social Security Ruling can in some circumstances provide an evidentiary basis for a factual finding at step 5, it is clear from *Sykes* that references to "the teachings" of an SSR or to the use of an SSR as a "framework for decisionmaking" will not suffice when it is not possible for a reviewing court to determine what portion of the cited ruling the ALJ thought "direct[ed] a determination of nondisability in" the case before him. *Sykes,* 228 F.3d at 271. SSR 85–15 is nine pages in length, and it is not apparent to us from the ALJ's opinion how the ALJ found such a directive.

The non-exertional impairment found by the ALJ was an inability to "operat[e] moving machinery due to ... episodic vertigo." Without further enlightenment with respect to the extent of this impairment

> and the ALJ's analysis of SSR 85–15, we are unable to determine whether the Commissioner carried her burden at step 5.

*Lamanna v. Comm'r of Soc. Sec.*, 116 F. App'x 354, 357 (3d Cir. 2004) (internal footnote omitted). When no binding precedent contradicts non-precedential opinions, they are relevant persuasive authority. *See In re Grand Jury Investigation,* 445 F.3d 266, 276 (3d Cir.2006).

None of the SSRs provide "crystal clear" guidance regarding balancing or manipulative limitations (reaching, handling, grasping, fingering). *Id.* Defendant may not rely on because the ALJ did not cite SSR 96-9p, and the ALJ "include a citation to the SSR in our determination or decision." AR 01-1(3). SSR 96-p also lacks clarity regarding manipulative limitations, as "significant" limitations will erode the occupational base, while "less significant" limitations will not. *Id.* Plaintiff was precluded from performing manipulative limitations 1/3 of the day. It is not "crystal clear" that being unable to perform manipulative limitations for 1/3 of the day is a "less significant," not a "significant," limitation. *Allen*, 417 F.3d at 407. With regard to balancing, it notes that if a claimant is "limited in balancing even when standing or walking on level terrain, there may be a significant erosion of the unskilled sedentary occupational base. It is important to state in the RFC assessment what is meant by limited balancing in order to determine the remaining occupational base. Consultation with a vocational resource may be appropriate in some cases." SSR 96-9p. The RFC does not state what is meant by occasional

balancing. (Tr. 21); *cf. Breslin v. Comm'r of Soc. Sec.*, 509 F. App'x 149, 155 (3d Cir. 2013) (finding that SSR 96-9p was "crystal clear" with regard to "climbing ladders, ropes, or scaffolds, balancing, kneeling, crouching, or crawling," along with stooping and "exposure to hazards such as machinery and heights is "considered unusual"); *Guerrero v. Comm'r of Soc. Sec.*, 249 F. App'x 289, 292 (3d Cir. 2007) (Affirming where only non-exertional limitation was to "simple, repetitive, and unskilled" work, which was directly addressed by SSR 96-9p).

SSR 85-15p did not allow the ALJ to rely on the Grids. SSR 85-15 applies when "evaluating solely non-exertional impairments." *Id.* It does not apply to this case, which includes exertional impairments. *Compare* 20 C.F.R. § Pt. 404, Subpt. P, App. 2, §200.00(e)(1) ("evaluation of disability where the individual has solely a nonexertional type of impairment") *with* §200.000(e)(2) (evaluation "where an individual has an impairment or combination of impairments resulting in both strength limitations and nonexertional limitations"). More importantly, SSR 85-15 states "[w]here a person has some limitation in climbing and balancing ***and it is the only limitation***, it would not ordinarily have a significant impact on the broad world of work." *Id.* (emphasis added). These are not Plaintiff's "only limitation(s)," so SSR 85-15p does not apply limitations in balance.

SSR 85-15p also fails with regard to manipulative limitations. It provides that a VE "would not ordinarily be required where a person has a loss of ability to

feel the size, shape temperature, or texture of an object by the fingertips, since this is a function required in very few jobs," but reaching or handling "are activities required in almost all jobs" so "[s]ignificant limitations of reaching or handling, therefore, may eliminate a large number of occupations a person could otherwise do," and "loss of fine manual dexterity narrows the sedentary and light ranges of work much more than it does the medium, heavy, and very heavy ranges of work. The varying degrees of loss which can occur may require a decisionmaker to have the assistance of a VS." *Id.* AR 01-1(3) requires the SSR to provide "guidance" regarding the specific non-exertional limitation, and SSR 85-15 provides no guidance when there are both exertional and non-exertional limitations, when climbing or balancing are not the only limitations, and when a claimant limited to sedentary work have "significant" reaching, handling, fingering, and feeling limitations, which would include a prohibition from performing these activities 1/3 of the time. *Id.* SSR 85-15 is not "crystal clear." *Allen*, 417 F.3d at 407.

Neither SSR 83-11, SSR 83-12, nor SSR 83-14 provide support for Defendant's claims. SSR 83-11 is a short summary of the definitions of "RFC," "Age," "Education," and "Work Experience." *Id.* It addresses no specific non-exertional limitations. *Id.* SSR 83-12 notes that "[w]here the extent of erosion of the occupational base is not clear, the adjudicator will need to consult a vocational resource." *Id.* It continues, "[a]nother situation where VS assistance is advisable is

where an individual's exertional RFC does not coincide with the full range of sedentary work." *Id.* It concludes:

> a. Where an individual's impairment has not met or equal the criteria of the Listing of Impairments at an earlier step in the sequence of adjudication, but the full range of sedentary work is significantly compromised, section 201.00(h) of Appendix 2 provides that a finding of "Disabled" is not precluded for even younger individuals. (The example in that section are of significantly restricted occupational bases.)
>
> b. Where a person can perform all of the requirements of sedentary work except, for example, a restriction to avoid frequent contact with petroleum based solvents, there is an insignificant compromise of the full range of sedentary work. Technically, because of the restriction, this person cannot perform the full range of sedentary work. However, this slight compromise within the full range of sedentary work (i.e., eliminating only the very few sedentary jobs in which frequent exposure to petroleum based solvents would be required) leaves the sedentary occupational base substantially intact. Using the rules as a framework, a finding of "Not disabled" would be appropriate.

*Id.* Unlike the example where the only additional non-exertional limitation was a "a restriction to avoid frequent contact with petroleum based solvents," Plaintiff had multiple, various, broad non-exertional limitations in the RFC. (Tr. 21). SSR 83-14 provides that "at all exertional levels, a person must have certain use of the arms and hands to grasp, hold, turn, raise, and lower objects. Most sedentary jobs require good use of the hands and fingers." *Id.* SSR 83-14 continues, "a limitation to unskilled sedentary work with an additional loss of bilateral manual dexterity that is significant and, thus, warrants a conclusion of 'Disabled.' (The bulk of unskilled sedentary jobs requires bilateral manual dexterity.)." *Id.* It is not "crystal

clear" that being unable to use the hands or fingers for 1/3 of the day constitutes "good use of the hands and fingers." *Id.* SSR 83-14 does not address balancing, except to note that it is a type of non-exertional limitation. SSR 83-14, like *Allen*, notes the need for clarity:

> [T]here are three possible situations to consider:
>
> 1. Where it is clear that the additional limitation or restriction has very little effect on the exertional occupational base, the conclusion directed by the appropriate rule in Tables No. 1, 2, or 3 would not be affected.
>
> 2. Where it is clear that additional limitations or restrictions have significantly eroded the exertional job base set by the exertional limitations alone, the remaining portion of the job base will guide the decision.
>
> 3. Where the adjudicator does not have a clear understanding of the effects of additional limitations on the job base, the services of a VS will be necessary.

*Id.*

The SSRs do not provide "crystal clear" guidance that Plaintiff could perform work in the national economy despite being limited to sedentary work with limitations in using her hands or arms and balancing. *Allen*, 417 F.3d at 407. The Court recommends remand for the ALJ to develop appropriate vocational evidence.

### b.     Remedy

Remand, rather than reversal and award of benefits, is the appropriate remedy in this case. *See Markle v. Barnhart*, 324 F.3d 182, 189 (3d Cir. 2003)

("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation") (internal quotations omitted)).

## V. Conclusion

The undersigned recommends that the Court vacate the decision of the Commissioner pursuant to 42 U.S.C. § 405(g) and remand the case for further proceedings.

Accordingly, it is HEREBY RECOMMENDED:

1. The decision of the Commissioner of Social Security denying Plaintiff's benefits under the Act be vacated and the case remanded to the Commissioner of Social Security to develop the record fully, conduct a new administrative hearing and appropriately evaluate the evidence.

2. The Clerk of Court close this case.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a Magistrate Judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A Judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.

The Judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.


Dated: March 3, 2017                        s/Gerald B. Cohn
                                 GERALD B. COHN
                                 UNITED STATES MAGISTRATE JUDGE